#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| HORATIO NIMLEY, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v.  : | |
| : | NO.  15-4473 |
| CARL ROBINSON, et al., : | |
| : | |
| Defendants. : | |

#### MEMORANDUM

STENGEL, J.                                                                                                November 9, 2016

Horatio Nimley filed this civil rights action against two police officers who arrested him. The officers, Defendants Carl Robinson and Bryan Boyer, filed a motion for summary judgment. Defendants argue that there are no genuine issues of material fact with respect to Plaintiff's § 1983 claims for excessive force and for unlawful seizure, false arrest, and false imprisonment, and that they are entitled to qualified immunity.  As there are numerous factual disputes central to the resolution of Plaintiff's claims, I must deny Defendants' motion for summary judgment.

**I.       FACTUAL BACKGROUND**

At approximately 6:00 a.m. on September 7, 2013, Norristown Police were dispatched to the 600 block of East Oak Street in Norristown.  (Defs.' Statement of Undisputed Material Facts ("DSUMF") ¶ 1.)  The dispatch was based on a call that a suspicious person, a black male wearing a dark hoodie, had been in the back yard of a residence on that street and was circling the block on a bicycle.  (Id. ¶¶ 1–2.)

It was a few minutes after 6:00 a.m. when Officers Seligman and Robinson arrived in response to the dispatch call.  (DSUMF ¶¶ 3–5.)  Officer Seligman testified at his deposition that "[a]t the time [he] responded to the call it was already daylight."  (PSMF ¶ 4 (quoting Deposition of Terrance Seligman, Mar. 4, 2016 ("Seligman Dep.") 64:6–7).)  Defendant Robinson testified at his deposition that "the sun was just starting to come up" when he received the call to respond to the scene.  (PSMF ¶ 4 (quoting Deposition of Carl Robinson, Mar. 4, 2016 ("Robinson Dep.") 44:19–22).)  Robinson had previously testified that "it was dawn" at the time of the call.  (PSMF ¶ 4 (quoting Commonwealth v. Nimley, No. 7701-2013 (Pa. Comm. Pl. May 27, 2014) Tr. at 18:4).)  Police video footage captured at 6:09 a.m. from one vehicle appears to show more daylight than another image captured slightly later from another vehicle.  (See Pl.'s Resp. Opp'n to Defs.' Mot. Summ. J. Ex. D, Police Car 33 Video Footage at 6:09:37; Defs.' Mot. Summ. J. Ex. 6, Police Car 13 Video Footage at 6:12:40.)

After they arrived at the scene, Officers Seligman and Robinson saw a bike leaning up against the property at 609 East Oak Street.  (DSUMF ¶ 6.)  As they began checking the property, they saw a black male wearing a dark hoodie emerging from the rear of 617 East Oak Street.  (Id. ¶ 7.)  Defendant Robinson testified at his deposition that he thought the man in the hoodie came out from a breezeway between two homes, but that he did not plan to arrest him at that time because "[he] hadn't seen him commit any crime."  (PSMF ¶ 8 (quoting Robinson Dep. 45:23–46:3).)  According to Seligman, however, the man they saw was not coming from the rear of a building, but was "walking on the sidewalk."  (Pl.'s Counterstatement of Material Facts ¶ 7 (quoting Seligman Dep. 51:25–53:3).)

When the officers told the man in the hoodie that they wanted to talk to him, he immediately ran away.  (DSUMF ¶ 8.)  Officer Seligman did not recall whether he told him that

he was under arrest at that time. (PSMF ¶ 10 (citing Seligman Dep. 53:7–10, 55:13–16).) Seligman pursued the man on foot until he disappeared over a fence. (PSMF ¶ 11 (citing Seligman Dep. 59:12–61:4).) Seligman did not see the man in the hoodie again, because he stayed behind to check the area and interview residents, and ultimately concluded that no crimes had been committed. (PSMF ¶ 12 (citing Seligman Dep. 61:8–14, 61:20–23, 62:15–63:4).)

Meanwhile, Defendant Robinson used his radio to report that there was a fleeing suspect and, after a brief foot pursuit, he chased the suspect using his police vehicle. (DSUMF ¶ 9; PSMF ¶ 13.) Robinson lost sight of the man, but continued to drive around the neighborhood. (DSUMF ¶ 10.) A few minutes later, Robinson saw someone running west across the 800 block of Thomas Street to the 800 block of Violet Street. (DSUMF ¶ 10.) While following that person in his police vehicle,[1] Robinson saw him attempt to climb over a chain link fence that runs along the 800 block of Violet Street. (Id. ¶ 11.) Robinson got out of his car and tried to stop the man from climbing over the fence by grabbing him around the waist and pulling. (Id. ¶ 12.) This individual, later identified as Plaintiff Horatio Nimley ("Plaintiff"),[2] resisted being pulled off the fence, even after being told he was under arrest. (Id. ¶¶ 13 (citing Robinson Dep. 58:4–59:11), 17.) Plaintiff disputes that he was told he was under arrest at that time. (Pl.'s Counterstatement of Material Facts ¶ 12 (citing Robinson Dep. 58:6–7; Deposition of Horatio Nimley, Mar. 9, 2016 ("Plaintiff Dep.") 43:14–44:6).)

Plaintiff disputes that he was the person that the officers encountered when they arrived on East Oak Street. (Pl.'s Counterstatement of Material Facts ¶¶ 10–17.) According to Plaintiff,

---

[1] Defendant Robinson did not activate the recording device in his police vehicle during his pursuit or arrest of Plaintiff, which is a violation of Norristown Police Department policy. (PSMF ¶¶ 50–51.)

[2] Neither Seligman nor Robinson recognized Plaintiff, because they had never seen him before. (PSMF ¶ 17 (citing Robinson Dep. 28:20–29:6; Seligman Dep. 37:23–38:13).)

on the morning of September 7, 2013, he was walking from his mother's house, where he lived at the time, to a friend's house less than a mile away. (PSMF ¶¶ 14–15 (citing Plaintiff Dep. 23:15–24:6, 21:21–22:7, Pl.'s Resp. Opp'n to Defs.' Mot. Summ. J. Ex. I, Driver's License information for Horatio Nimley).) Plaintiff asserts that he first encountered the police on Thomas Street. (PSMF ¶ 16 (citing Plaintiff Dep. 23:1–12, 25:1–23).) Plaintiff began to run when he saw Defendant Robinson's police car coming toward him, and cut through a church parking lot between Thomas Street and Violet Street. (PSMF ¶¶ 18–19 (citing Plaintiff Dep. 26:14–27:11, 28:16–17).) Robinson chased Plaintiff in his police car through the empty lot, at which point Plaintiff turned onto Violet Street. (PSMF ¶¶ 20–21 (citing Plaintiff Dep. 28:20–29:11, 29:8–31:24).) According to Plaintiff, Robinson struck him in the left calf with his police car, causing him to stumble. (PSMF ¶¶ 22–23 (citing Plaintiff Dep. 29:22–30:20, 30:20–31:9).) Plaintiff then attempted to climb the six-foot chain link fence that separated Violet Street and Scagg Cottman Park. (PSMF ¶ 24.)

While Defendant Robinson was trying to get Plaintiff off the fence, another Norristown police officer, Defendant Bryan Boyer, arrived in his car[3] and assisted Robinson by unwrapping Plaintiff's fingers from the links of the fence.[4] (DSUMF ¶ 14.) After the officers got Plaintiff off the fence, he was taken to the ground and, according to Defendants, actively resisted being handcuffed by flailing around and pulling his arms underneath his body. (DSUMF ¶ 15.) Boyer, however, testified at his deposition that Plaintiff "passively resisted," which is consistent with the use of force report that also characterized Plaintiff's resistance as "passive." (Plaintiff's Counterstatement of Material Facts ¶ 16 (quoting Deposition of Bryan Boyer, Apr. 12, 2016

---

[3] Defendant Boyer did not activate the recording device in his police vehicle after arriving at the scene. (PSMF ¶¶ 50–51.)

[4] Defendant Boyer did not recognize Plaintiff, and noted he had never seen him before. (PSMF ¶ 27 (citing Deposition of Bryan Boyer, Apr. 12, 2016 ("Boyer Dep.") 99:5–18).)

("Boyer Dep.") 79:18–80:16; citing Pl.'s Ex. P, Less Lethal Force Report of Sept. 7, 2013).) According to Plaintiff, after he was on the ground Robinson straddled him, Boyer kicked his left leg out to the side and kneed him in the buttocks, and both officers punched and struck him repeatedly in the head, body, and face. (PSMF ¶¶ 35–37 (citing Plaintiff Dep. 41:1–7, 41:20–45:3, 45:5–17, 47:13–16; Boyer Dep. 87:24–88:19).) During his encounter with the police, Plaintiff never tried to punch, kick, or strike the officers, and he did not have any weapons or controlled substances. (PSMF ¶¶ 33–34 (Plaintiff Dep. 47:23–48:3; Boyer Dep. 81:3–7; Robinson Dep. 72:12–73:25).) Plaintiff was eventually subdued and handcuffed. (DSUMF ¶ 16.)

At the time of his arrest, Plaintiff was bleeding from various parts of his face, right eye, and mouth, (PSMF ¶ 40 (citing Plaintiff Dep. 46:7–16, 51:16–23)), and after the arrest his right eye swelled shut. (Id.) Plaintiff testified at his deposition that, although he told Defendants that he was bleeding, they ridiculed him and did not help him with his injuries. (PSMF ¶ 41 (citing Plaintiff Dep. 50:4–51:11).) In an effort to show the officers he was actually bleeding, Plaintiff spit blood onto the trunk of a police car. (PSMF ¶ 42 (citing Plaintiff Dep. 53:1–6).) Plaintiff asserts that Defendant Robinson then hit his head against the trunk of the police car and rubbed his face in the blood and saliva. (PSMF ¶ 43 (citing Plaintiff Dep. 54:1–12).) Plaintiff again spit on the car, and, according to Plaintiff, Robinson again slammed his head into the trunk of the car. (PSMF ¶¶45–46 (citing Plaintiff Dep. 54:20–55:13, 55:22–24).)

Defendant Robinson arrested Plaintiff only for loitering and prowling. (PSMF ¶ 39 (citing Robinson Dep. 64:18–20; Commonwealth v. Nimley, No. 7701-2013 (Pa. Comm. Pl. May 27, 2014) Tr. at 21:16–22).) Plaintiff was later charged with prowling by night, resisting arrest, and disorderly conduct. (DSUMF ¶ 18.) The Montgomery County District Attorney's

5

Office abandoned the charge of prowling by night prior to Plaintiff's criminal trial. (Id. ¶ 19.) At the state criminal trial, the judge ruled that since the prowling by night charge had been abandoned, he had to dismiss the resisting arrest charge because there had not been a lawful arrest.[5] (Id. ¶ 20.)

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A factual dispute is "material" only if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). For an issue to be "genuine," a reasonable fact-finder must be able to return a verdict in favor of the non-moving party. Id.

On summary judgment, the moving party has the initial burden of identifying evidence that shows the absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004). It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Boyle v. Cty. of Allegheny, 139 F.3d 386, 393 (3d Cir. 1998) (internal citation omitted). Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citations omitted).

The moving party must establish an absence of a genuine issue of material fact, but it need not "support its motion with affidavits or other similar materials negating the opponent's claim." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Instead, it can meet its burden by "pointing out . . . that there is an absence of evidence to support the nonmoving party's claims."

---

[5] Plaintiff was, however, convicted of disorderly conduct. (DSUMF ¶ 21.)

6

Id. at 325. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. The mere existence of some evidence in support of the non-movant is not sufficient to support a denial of a motion for summary judgment; there must be enough evidence to enable a jury to reasonably find in the non-movant's favor on that issue. Anderson, 477 U.S. at 249–50 (internal citations omitted).

### III. DISCUSSION

After careful consideration of the parties' arguments and the evidence in the record, I find that genuine issues of material fact remain with respect to both counts of Plaintiff's third amended complaint. I therefore find that Defendants are not entitled to summary judgment on Plaintiff's excessive force claim or his claim for unlawful seizure, false arrest, and false imprisonment. Because I must deny Defendants' motion for summary judgment as to both of Plaintiff's claims, I must also deny Defendants' motion with respect to their assertion that they are entitled to qualified immunity. The parties' arguments regarding each of Plaintiff's claims, as well as Defendants' qualified immunity defense, are each discussed in turn.

#### A. Count One: Plaintiff's § 1983 Excessive Force Claim

"To establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000) (internal citations omitted). Plaintiff alleges that, during his encounter with the Norristown police on September 7, 2013, Defendants used excessive force that was not reasonably necessary under the circumstances and which violated his Fourth Amendment rights. (Third Am. Compl. ¶ 24.) Defendants were acting under color of state law during their encounter with Plaintiff and during

the alleged violations of his Fourth Amendment rights. Thus, the threshold requirements for stating a civil rights claim for excessive force are satisfied.

"'To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable.'" Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004) (quoting Estate of Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)) (additional citations omitted). As to the first aspect, "[a] seizure occurs '[w]henever an officer restrains the freedom of a person to walk away.'" Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (quoting Tennessee v. Garner, 471 U.S. 1, 7 (1985)). The undisputed facts of this case establish that a seizure occurred at least as of the time that Defendants attempted to get Plaintiff off the fence.[6]

In addressing the second aspect of an excessive force claim—whether the force used was reasonable—courts must determine "whether under the totality of the circumstances, 'the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivations.'" Kopec, 361 F.3d at 776 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). Whether the amount of force used was "reasonable" is a context-specific inquiry that "should frequently remain a question for the jury." Abraham v. Raso, 183 F.3d 279, 290 (3d Cir. 1999). Summary judgment may, however, be appropriate "'if the district court concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'" Kopec, 361 F.3d at 777 (quoting Abraham, 183 F.3d at 290) (additional citations and quotations omitted).

---

[6] As discussed below, there are factual disputes as to whether Plaintiff was first "seized" prior to reaching the fence. These disputes raise the question of whether Plaintiff was first seized (1) on Oak Street, if the first man the officers saw was actually Plaintiff; (2) when Plaintiff encountered Defendant Robinson on Thomas Street, and if he was under arrest at that time; or (3) when Defendant Robinson allegedly struck Plaintiff with his police car.

"While some courts 'freeze the time frame' and consider only the facts and circumstances at the precise moment that excessive force is applied," the Third Circuit considers "all of the relevant facts and circumstances leading up to the time that the officers allegedly used excessive force." Rivas, 365 F.3d at 198 (citing Abraham, 183 F.3d at 291). "Factors to consider in making a determination of reasonableness include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight." Kopec, 361 F.3d at 776–77 (citing Graham, 490 U.S. at 396). In addition to those factors, courts may also consider "the possibility that the persons subject to the police action are violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time." Id. at 777 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997), abrogated on other grounds by Curley v. Klem, 499 F.3d 199 (3d Cir. 2007)). "It is also important to consider whether 'the physical force applied was of such an extent as to lead to injury.'" Walke v. Cullen, 491 F. App'x 273, 277 (3d Cir. 2012) (quoting Mellott v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998), cert. denied, 526 U.S. 1160 (1999)) (additional citations and quotations omitted). Ultimately, "[w]hen balancing these factors, [courts] must remember that 'the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" Mellott, 161 F.3d at 122 (quoting Graham, 490 U.S. at 396).

In this case, I am unable to balance the factors described above because there are numerous disputed issues of material fact surrounding Defendants' use of force and whether it was reasonable. First, the record evidence is inconsistent regarding the degree and type of force

9

Defendants used once Plaintiff was on the ground. Second, the officers differ in their account of whether Plaintiff was actively or passively resisting arrest once he was off the fence. Third, the parties are in disagreement about when Plaintiff was first told he was under arrest. Fourth, there are factual disputes regarding Plaintiff's allegations that Defendant Robinson struck him with his police car and slammed his head into the trunk and rubbed his face into his blood and saliva. These factual disputes—as well as the credibility determinations that would be required to evaluate them—cannot be resolved on a motion for summary judgment. Accordingly, I will deny Defendants' motion as to Plaintiff's excessive force claim.

    **B. <u>Count Two: Unlawful Seizure, False Arrest, and False Imprisonment</u>**

As stated above, in order "[t]o establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right protected by the Constitution or laws of the United States that was committed by a person acting under the color of state law." <u>Nicini</u>, 212 F.3d at 806. Here, Plaintiff alleges that Defendants violated his Fourth and Fourteenth Amendment rights by seizing, arresting, and detaining him without probable cause, and that Defendants' knowledge of the facts and circumstances surrounding his arrest were insufficient for a reasonable person to believe that an offense had been or was being committed by Plaintiff. (Third Am. Compl. ¶¶ 29–30.) Plaintiff further alleges that, as a result of his arrest without probable cause, he was unlawfully detained and deprived of his liberty without due process of law. (<u>Id.</u> ¶ 31.) Plaintiff has thus satisfied the threshold requirements for a § 1983 claim for unlawful seizure, false arrest, and false imprisonment.

"False arrest and false imprisonment are both injuries arising from the same Fourth Amendment injury, *i.e.* an unreasonable seizure." <u>Clifton v. Borough of Eddystone</u>, 824 F. Supp. 2d 617, 622 n.3 (E.D. Pa. 2011); <u>see also</u> <u>Karkut v. Target Corp.</u>, 453 F. Supp. 2d 874, 879

(E.D. Pa. 2006) ("False arrest and false imprisonment are 'nearly identical claims' that are 'generally analyzed together.'") (quoting Brockington v. Phila., 354 F. Supp. 2d 563, 570 n.8 (E.D. Pa. 2005) (citation omitted)). "The elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention, where such detention is unlawful if it is the consequence of a false arrest." Karkut, 453 F. Supp. 2d at 879 (citation omitted). Stated differently, "[a] false arrest is a necessary element of false imprisonment." McHugh v. Koons, No. Civ.A. 14-7165, 2015 WL 9489593, at *6 n.8 (E.D. Pa. Dec. 30, 2015) (citing Rosembert v. Borough of E. Lansdowne, 14 F. Supp. 3d 631, 641 n.8 (E.D. Pa. 2014). "Specifically, false arrest is one made 'without probable cause.'" Karkut, 453 F. Supp. 2d at 879.

"Probable cause exists when 'the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed.'" Stetser v. Jinks, 572 F. App'x 85, 87 (3d Cir. 2014) (quoting United States v. Cruz, 910 F.2d 1072, 1076 (3d Cir. 1990) (citing Dunaway v. New York, 442 U.S. 200, 208 n.9 (1979))). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." Devenpeck v. Alford, 543 U.S. 146, 152 (2004) (citing Maryland v. Pringle, 540 U.S. 366, 371 (2003)). "Although the probable cause inquiry is usually a question for the jury, 'where no genuine issue as to any material fact exists and where credibility conflicts are absent, summary judgment may be appropriate.'" Stetser, 572 F. App'x at 87 (quoting Sharrar, 128 F.3d at 818 (citation omitted)); see also Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788–89 (3d Cir. 2000) ("[A] district court may conclude 'that probable cause exists as a matter of law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual

11

finding,' and may enter summary judgment accordingly.") (quoting Sherwood v. Mulvihill, 113 F.3d 396, 401 (3d Cir. 1997)).

In this case, there are genuine issues of material fact, as well as credibility conflicts, which require the probable cause inquiry to be presented to a jury. First, the record evidence is inconsistent regarding how dark or light out it was at the time the officers responded to the dispatch call, and thus at the time they encountered Plaintiff. The amount of daylight is relevant to the question of whether Defendant Robinson had probable cause to arrest Plaintiff for a crime that, according to Pennsylvania law, must occur at nighttime.[7] Second, Plaintiff disputes that he is the man the officers first encountered. Even if Plaintiff was the man the officers encountered on East Oak Street, there is a dispute in the record as to whether that man was coming out from between two buildings, or whether he was on the sidewalk. Third, there is a dispute in the record regarding whether the man on East Oak Street was told he was under arrest before he fled, and whether Plaintiff was told he was under arrest before he ran away from Defendant Robinson after encountering him on Thomas Street.[8] In light of these factual disputes, I cannot determine whether Plaintiff was unlawfully seized, or whether he was falsely arrested and falsely imprisoned, without weighing those disputes and making credibility determinations.

---

[7] Under Pennsylvania law, the crime of loitering and prowling at nighttime requires "the following elements and circumstances: (1) there must be a loitering and prowling; (2) it must be done maliciously; (3) the act must occur around a dwelling house or other place used wholly or in part for dwelling or living purposes; (4) the place so used must belong or be occupied by another; (5) it must be done at nighttime." Commonwealth v. Sewell, 702 A.2d 570, 571 (Pa. Super. Ct. 1997) (internal citation and quotation marks omitted).

[8] Mere flight from police, without more, is not enough for probable cause to arrest. See United States v. Navedo, 694 F.3d 463, 471–72 (3d Cir. 2012); see also id. at 472 ("[W]e have not held that mere unprovoked flight from approaching police would support probable cause to arrest . . . .").

Accordingly, I must deny Defendants' motion for summary judgment with respect to Plaintiff's claim for unlawful seizure, false arrest, and false imprisonment.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. (See Defs.' Mem. Supp. Mot. Summ. J. 13; Defs.' Reply 5.) The qualified immunity defense requires a two-step analysis. Wilson v. Russo, 212 F.3d 781, 786 (3d Cir. 2000). First, a court must "determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Id. (quoting Conn v. Gabbert, 526 U.S. 286, 290 (1999)). If the plaintiff has so alleged, the court must "proceed to determine whether that right was clearly established at the time of the alleged violation." Id. "Summary judgment is appropriate if no reasonable juror could conclude that [a plaintiff's] clearly established rights were violated." Id. (citing Orsatti v. N.J. State Police, 71 F.3d 480, 482 (3d Cir. 1995)).

As discussed above, there are genuine issues of material fact which preclude granting summary judgment on Plaintiffs' claims of excessive force and unlawful seizure, false arrest, and false imprisonment. Because I cannot, based on the record evidence in this case, determine whether constitutional violations occurred, I likewise cannot determine whether Defendants are entitled to qualified immunity. Accordingly, entering summary judgment in Defendants' favor on qualified immunity grounds as to the excessive force claim or the claim of unlawful seizure, false arrest, and false imprisonment is not appropriate.

### IV. CONCLUSION

In light of the foregoing, I find Defendants have not established that they are entitled to summary judgment on Plaintiff's claims, or that they are entitled to qualified immunity. Defendants' motion for summary judgment is therefore denied.

An appropriate Order follows.